IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CASINO QUEEN MARQUETTE, INC.; CASINO QUEEN, INC., <br><br> Plaintiffs, <br><br> v. <br><br> SCIENTIFIC GAMES CORPORATION; BALLY TECHNOLOGIES, INC.; and BALLY GAMING, INC., <br><br> Defendants. | No. 21-cv-01798 <br><br> Judge John F. Kness |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Casino Queen Marquette, Inc. and Casino Queen, Inc. purchased automatic playing card shufflers from Defendants Scientific Games Corporation, Bally Technologies, Inc., and Bally Gaming, Inc. But, Plaintiffs say, Defendants obtained fraudulent patents for those card shufflers and engaged in sham lawsuits to enforce those patents. When Plaintiffs learned about Defendants' conduct and realized that Defendants had been charging Plaintiffs supracompetitive prices—prices higher than those that would be set in a competitive market—for card shufflers, Plaintiffs brought the present antitrust suit seeking damages and injunctive relief.

Presently before the Court is Defendants' motion to dismiss Plaintiffs' claims as time-barred. (Dkt. 15.) But, as explained below, Plaintiffs need not plead around

affirmative defenses like statutes of limitations. So long as there is a conceivable set of facts, consistent with the complaint, "that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). Such a set of facts exists here, and Plaintiffs have not "pleaded [themselves] out of court" by alleging unambiguously that they knew or reasonably should have known about the injuries giving rise to this suit before the statute of limitations expired. Accordingly, the motion to dismiss is denied.

## I.  BACKGROUND

Plaintiffs operate riverboat casinos. (Dkt. 1 ¶¶ 11−12.) Defendants develop, manufacture, and sell technology-based products and services for the "worldwide gaming, lottery, social and digital gaming industries." (*Id.* ¶¶ 13−15.)[1] Between April 2009 and the filing of this suit, Plaintiffs purchased or leased "substantial quantities" of automatic card shufflers from Defendants. (*Id.* ¶¶ 11−12.) According to Plaintiffs, Defendants charged "supra-competitive prices"—and thus "collect[ed] monopoly rents"—for those card shufflers. (*Id.* ¶ 5.)

---

[1] Defendants have undergone various corporate evolutions and name changes. SHFL Entertainment, Inc., formerly known as Shuffle Master, Inc., merged into Bally Technologies, Inc. in June 2014. (Dkt. 1 ¶ 15.) In November 2014, Scientific Games Corporation acquired Bally Technologies, Inc. (*Id.* ¶ 17.) After the acquisition, Scientific Games Corporation used the trade names "Shuffle Master" and "SHFL" in the sale and lease of automatic card shufflers. (*Id.*)

Defendants were allegedly able to charge supracompetitive prices because, through a scheme of "patent fraud and sham litigation," Defendants "achieved a 100% share in the [$100 million card shuffler] market." (*Id.* ¶¶ 3, 28, 33, 35.) According to Plaintiffs, Defendants "defrauded the [U.S. Patent and Trademark Office] by intentionally omitting material references from" Defendants' patent applications and subsequent filings. (*Id.* ¶ 68.) Indeed, Defendants omitted critical information about the existence of earlier automatic card shuffler models including the "Nicoletti," the "Roblejo," and the "Luciano" shufflers. (*Id.* ¶¶ 68−69.) Plaintiffs say that if Defendants had properly disclosed information about those earlier models, the PTO would not have granted Defendants' patent applications for the automatic card shufflers at issue here. (*Id.* ¶¶ 82, 84−86.)

Plaintiffs also allege that Defendants engaged in "sham" litigation to enforce their fraudulently-obtained patents. (*Id.* ¶¶ 35−66.) As early as 2003, Defendants sued or threatened to sue potential competitors "to secure Defendants' dominance and monopoly." (*Id.* ¶ 38.)[2] So equipped with "fraudulently procured patents," enforced through "sham" litigation, Defendants could charge supracompetitive prices. (*Id.* ¶¶ 2, 31.)

---

[2] Defendants' first alleged instance of sham enforcement litigation came in the form of a counterclaim against Card, LLC in a suit brought in 2003. (Dkt. 1 ¶ 38); *see CARD, LLC v. Shuffle Master, Inc.*, No. 03-cv-0244, (D. Nev.). In the years following the *CARD* litigation, Defendants brought four patent infringement lawsuits against VendingData (in 2004), *see Shuffle Master, Inc. v. VendingData Corp.*, No. 04-cv-01373 (D. Nev.); Taiwan Fulgent (2009), *see Shuffle Master, Inc. v. Taiwan Fulgent Enter. Co.*, No. 09-cv-02194 (D. Nev.); TCS (2012), *see Shuffle Master, Inc. v. TCS John Huxley Am., Inc.*, No. 12-cv-01626 (D. Nev.); and DigiDeal (2012), *see SHFL Ent., Inc. v. DigiDeal Corp.*, No. 12-cv-01782 (D. Nev.). (Dkt. 1 ¶¶ 37−66.)

3

Frustrated by that conduct, some of Defendants' competitors began to pursue legal challenges to Defendants' market dominance. In April 2015, Shuffle Tech "filed suit against Defendants alleging that their patents were invalid and that [Defendants] nevertheless knowingly attempted to enforce [those patents] in violation of" various state and federal laws. (*Id.* ¶ 62.)[3] A federal jury in Chicago eventually ruled in favor of Shuffle Tech, finding (in Plaintiffs' words) that Defendants "had illegally monopolized the relevant shuffle market by using sham litigation predicated on invalid patents obtained by fraud." (*Id.* ¶ 63); *see Shuffle Tech, et al. v. Scientific Games Corp.*, No. 15-cv-3702, Dkt. 293 (N.D. Ill.) ("*Shuffle Tech* Litigation"). And on March 20, 2020, in a similar suit brought by TCS Inc., another judge in this District denied Defendants' motion to dismiss. (Dkt. 1 ¶ 2); *see TCS John Huxley Am., Inc. v. Sci. Games Corp.*, 2020 WL 1678258 (N.D. Ill. March 20, 2020).

Plaintiffs allege that they were unaware of Defendants' unlawful conduct until Judge Blakey's denial of Defendants' motion to dismiss in *TCS* on March 20, 2020. (Dkt. 1 ¶ 87.) Specifically, after that decision, "through conversations with their attorneys," Plaintiffs "discovered that Defendants had achieved not only market power as [a result] of superior skill, foresight, or industry, but in fact, maintained monopoly power through their use of anticompetitive and illicit behavior designed to exclude and punish would-be competitors." (*Id.*)

---

[3] Under § 2, it is unlawful to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize." 15 U.S.C. § 2.

4

Plaintiffs filed suit on April 2, 2021, seeking damages and injunctive relief under 15 U.S.C. §§ 15, 26. (*See* Dkt. 1.) Section 15 authorizes suits by "any person . . . injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15. Then, section 26 entitles parties "to sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26.

Now before the Court is Defendants' motion to dismiss, in which Defendants argue that Plaintiffs' suit is barred by the applicable statute of limitations. According to Defendants, had Plaintiffs "exercised reasonable diligence in the months and years before April 2017—four years before they filed the present case—Plaintiffs would have discovered their claims." (Dkt. 21 at 6.) In Defendants' view, the March 20, 2020 discovery date alleged by Plaintiffs "is simply implausible." (Dkt. 16 at 17.)

## II. STANDARD OF REVIEW

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774,

5

777 (7th Cir. 2022). In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the Plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678–79.

## III. DISCUSSION

Plaintiffs' claim under 15 U.S.C. § 15 is subject to a four-year statute of limitations. 15 U.S.C. § 15b ("Any action to enforce any cause of action under section 15 . . . of this title shall be forever barred unless commenced within four years after the cause of action accrued."); *see In re Copper Antitrust Litig.*, 436 F.3d 782, 789 (7th Cir. 2006) (applying § 15b's statute of limitations to private federal antitrust action).[4]

Statutes of limitations generally begin to run—that is, the cause of action "accrue[s]" under 15 U.S.C. § 15b—when the "defendant commits an act that injures a plaintiff's business." *In re Copper*, 436 F.3d at 789 (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971)). But under the discovery rule, the limitations period does not begin to run until the plaintiff "discovered or should have

---

[4] Plaintiffs' request for injunctive relief under 15 U.S.C. § 26 is subject to the equitable doctrine of laches. *See Oliver v. SD-3C LLC*, 751 F.3d 1081, 1085 (9th Cir. 2014). As other courts have explained, "the four-year statute of limitations in 15 U.S.C. § 15b furnishes a guideline for computation of the laches period." *Samsung Elecs. Co., Ltd. v. Panasonic Corp.*, 747 F.3d 1199, 1205 (9th Cir. 2014) (quotation omitted). Although "the final decision [as to the period applicable to laches] is an equitable one left to the judge's discretion," *Elec. Relays (India) Pvt. Ltd. v. Pascente*, 610 F. Supp. 648, 655 (N.D. Ill. 1985), as a practical matter, "whether a [15 U.S.C. § 26] plaintiff seeks damages or an injunction, [the plaintiff] must file its lawsuit within four years from 'the accrual of the claim,' " *New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 35 (D.D.C. 2021) (quoting *Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519, 531 (D.C. Cir. 2010)); *see also Oliver*, 751 F.3d. at 1086 ("[I]n applying laches, we look to the same legal rules that animate the four-year statute of limitations under" 15 U.S.C. § 15b.).

. . . discovered" its injury. *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004); *see also In re Sulfuric Acid Antitrust Litig.*, 703 F.3d 1004, 1014 (7th Cir. 2012) (applying discovery rule to federal antitrust suit); *In re Copper*, 436 F.3d at 789 ("[I]n the absence of a contrary directive from Congress [statutes of limitations are] qualified by the discovery rule."). Other Courts in this District apply the discovery rule in cases like this. *See, e.g., In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 808 (N.D. Ill. 2017).

Plaintiffs' alleged injury is their payment of "more [money] for automated card shufflers than they otherwise would have in a competitive market." (Dkt. 1 ¶ 1.) Whether the present suit is barred by the statute of limitations thus turns on whether Plaintiffs "discovered or should have discovered" that Defendants charged them such supracompetitive prices more than four years before the filing of this suit; in other words, before April 2, 2017.

In their motion to dismiss, Defendants argue that the present suit is time-barred because "the actions giving rise to Plaintiffs' claims"—Defendants' alleged fraudulent procurement of patents and engagement in sham litigation—"date back to events between 2003 and 2012" and because those actions have "been the subject of other widely-publicized antitrust litigation as early as 2015." (Dkt. 16 at 6.)

But it is well-established that a plaintiff generally does not need to "anticipate and overcome" affirmative defenses at the pleading stage. *Sidney Hillman*, 782 F.3d at 928 (quoting *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009)). Dismissal on the basis of affirmative defenses is only appropriate

7

when the complaint "set[s] forth everything necessary to satisfy the affirmative defense," by "plainly reveal[ing] that [the] action is untimely under the governing statute of limitations." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)); *see also Sidney Hillman*, 782 F.3d at 928. If there exists a conceivable set of facts, consistent with the complaint, "that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Sidney Hillman*, 782 F.3d at 928.

Plaintiffs' allegations, taken either individually or all together, do not definitively demonstrate that Plaintiffs "discovered" before April 2, 2017 that they were paying supracompetitive prices for the automatic card shufflers. In fact, Plaintiffs allege the opposite. Despite referencing Defendants' earlier unlawful conduct (*see, e.g.*, Dkt. 1 ¶¶ 14–31), Plaintiffs allege they were *unaware* of that conduct until the court denied Defendants' motion to dismiss in *TCS*. (*Id.* ¶ 87); *see TCS John Huxley Am., Inc. v. Sci. Games Corp.*, 2020 WL 1678258 (N.D. Ill. Mar. 20, 2020). Only after discussions with their lawyers in the wake of the *TCS* decision on March 20 do Plaintiffs contend they "discovered" Defendants were charging supracompetitive prices for automatic card shufflers. (Dkt. 1 ¶ 87.)

Defendants argue that, Plaintiffs' allegations aside, Plaintiffs "should have discovered" their injuries much earlier. (Dkt. 16 at 17.) According to Defendants, "allegations have been public for far too long, and in too many prior cases, for

8

Plaintiffs to plausibly allege that they could not have discovered them until [March 20, 2020]." (*Id.* at 15.) Defendants assert that Plaintiffs should have known of their antitrust injury from press coverage between 2002 and 2015 describing Defendants' purported sham lawsuits and unlawful conduct, as well as from the filing of high-profile lawsuits against Defendants by other plaintiffs. (Dkt. 16 at 4−5, 8, 10−11, 16−17; Dkt. 21 at 6.)

To support their motion, Defendants attach a series of exhibits: a motion filed in another court, one of Defendants' financial statements, and various news articles discussing litigation involving Defendants. (Dkts. 16-1−16-9.) According to Defendants, those attachments confirm that Defendants' allegedly unlawful conduct was "regularly reported on by media publications and disclosed in Defendants' securities filing" (Dkt. 16 at 9), and Defendants offer them as "evidence" that Plaintiffs were on "inquiry notice" well before April 2, 2017 (Dkt. 21 at 7 n.2). But before evaluating any potential "eviden[tiary]" weight of the materials appended to Defendants' motion, the Court must determine whether consideration of those materials is permissible.

At the motion to dismiss stage, the court is "typically confined to the pleadings alone." *Yassan v. J.P. Morgan Chase and Co.*, 708 F.3d 963, 975 (7th Cir. 2013); *see Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 754 n.2 (N.D. Ill. 2015) ("A court normally cannot consider extrinsic evidence at the motion to dismiss stage."). Indeed, in some circumstances, attachment of "matters outside the pleadings" to a motion to dismiss

9

requires the court to treat the motion "as one for summary judgment." Fed. R. Civ. P. 12(d).

This is not such a circumstance. For the Court to convert a motion to dismiss to one for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*. The Seventh Circuit requires "[a]dequate notice" to the nonmoving party. *Tri-Gen Inc. v. Int'l Union of Operating Eng'rs, Loc. 150, AFL-CIO*, 433 F.3d 1024, 1029 (7th Cir. 2006). Such notice is given, for example, when the "moving party frames its motion in the alternative as one for summary judgment," *id.*, or by otherwise "giving the non-moving party notice of the conversion and an opportunity to respond with evidentiary material," *Thompson v. Cope*, 900 F.3d 414, 425 (7th Cir. 2018). No such notice was given here (the motion to dismiss is not framed as one seeking summary judgment in the alternative), and Plaintiffs have not been given a reasonable opportunity to present evidence pertinent to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Squires-Cannon v. White*, 864 F.3d 515, 517 (7th Cir. 2017) (construing Rule 12(d) as requiring the court to give "all parties a reasonable opportunity for discovery"). Such a "reasonable opportunity" ultimately requires discovery that has not yet occurred. *See Sidney Hillman*, 782 F.3d at 928.

It is "well settled that, in deciding a Rule 12(b)(6) motion, a court may consider documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (quotation omitted). That incorporation-by-

10

reference doctrine "provides that[,] if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment." *Id.* That prevents a plaintiff from "evad[ing] dismissal . . . simply by failing to attach to his complaint a document that proved that his claim had no merit." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (citation omitted).

But Defendants' exhibits are neither "referred to in," nor "central to," Plaintiffs' complaint in this case. Instead, Defendants purport to include the exhibits to contest Plaintiffs' assertion that they did not have reason to know of the alleged antitrust injury before March 20, 2020. (Dkt. 16 at 9–11, 17.) That is not a permissible basis for consideration of Defendants' exhibits under the incorporation-by-reference doctrine, and the Court thus cannot consider the exhibits under that doctrine.

Finally, it is also true that, even at the motion to dismiss stage, courts "may take judicial notice of facts that are (1) not subject to reasonable dispute and [are] (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." *Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012); *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (explaining that courts may consider "matters of which [those courts] may take judicial notice" at the motion to dismiss stage). Materials about which courts are permitted to take judicial notice include, for example, "historical documents, documents contained in the public record, and reports of administrative bodies." *See United States v. Chaparro*, 956 F.3d 462, 475

11

n.3 (7th Cir. 2020) (quoting *Menominee Indian Tribe*, 161 F.3d at 456). Some of the materials attached to Defendants' motion to dismiss, such as the motion filed in another court and Defendants' financial statements, might be eligible for consideration under that doctrine.

Even if the Court took judicial notice of the exhibits attached to Defendants' motion, those exhibits, and Defendants' related arguments, do not support dismissal at this stage. None of Defendants' exhibits unambiguously confirms that Plaintiffs discovered or should have discovered Defendants' conduct before April 2017. Rather, the extent of Plaintiffs' knowledge—specifically about the attached court filings, SEC filings, and news articles, or generally about Defendants' allegedly unlawful conduct—is precisely the sort of matter requiring "an opportunity for discovery." *Sidney Hillman*, 782 F.3d at 928. Plaintiffs' awareness of news reports, court and administrative filings, the details of litigation against Plaintiffs' suppliers, and ultimately the competitiveness of prices Plaintiffs paid for card shufflers, is an issue of fact properly assessed with the benefit of a developed evidentiary record.

Drawing all reasonable inferences in their favor, *see Iqbal*, 556 U.S. at 678, Plaintiffs have not "pleaded [themselves] out of court" by alleging unambiguously that they knew or reasonably should have known about the injuries giving rise to this suit before April 2, 2017. *See Sidney Hillman*, 782 F.3d at 928.[5]

---

[5] Having found that Plaintiffs did not plead themselves out of court under the discovery rule, the Court does not address whether Plaintiffs' claim is viable under the fraudulent concealment or continuing violation doctrines. (*See* Dkt. 16 at 12−14.)

## IV. CONCLUSION

Defendants' motion to dismiss (Dkt. 15) is denied.

SO ORDERED in No. 21-cv-01798.

Date: May 19, 2022

JOHN F. KNESS
United States District Judge