UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CASINO QUEEN, INC., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 21-cv-01798 |
| SCIENTIFIC GAMES CORPORATION, *et al.*, | ) |
| | ) |
| | ) |
| Defendants. | ) |

### NON-PARTY THE UNITED STATES PLAYING CARD COMPANY'S MOTION TO QUASH

Pursuant to Fed. R. Civ. P. 45(d)(3), non-party The United States Playing Card Company ("USPCC") respectfully requests that the Court quash the subpoena from Casino Queen, Inc. d/b/a DraftKings at Casino Queen and Casino Queen Marquette, Inc. d/b/a Casino Queen Marquette ("Plaintiffs"). As detailed below, not only do Plaintiffs demand an admittedly burdensome, indiscriminate incursion into USPCC's proprietary commercial records, their demands—which relate to a different product and "market" altogether—are irrelevant to Plaintiffs' anti-trust action. Moreover, Plaintiffs have since revealed that parties to a different arbitration case (which have not issued any subpoenas) will also join this fishing expedition. For these reasons, USPCC respectfully asks the Court to quash Plaintiffs' subpoena, and pursuant to Fed. R. Civ. P. 45(d)(1), order Plaintiffs to pay the reasonable fees that USPCC has incurred to respond to their demands.

**I.  BACKGROUND**

On April 2, 2021, Plaintiffs filed an anti-trust class action against three particular companies ("Defendants") that "manufacture and sell fully automated card shufflers," alleging that Defendants "monopoliz[ed] [] the market for automatic card shufflers." Compl. (Doc. #1), ¶ 1. The Complaint expressly defines the relevant "market" as "automatic card shuffler machines," and reiterates that Defendants' control over these "shufflers" injured Plaintiffs, which "purchased

and/or leased substantial quantities of card shufflers." *Id*. at ¶ 5, 90; *see* ¶ 3 (Defendants control "virtually 100%" of "the market for automated card shufflers"), ¶ 7 (reiterating "relevant market for card shufflers"), ¶¶ 23–36 (detailing history and market for shufflers, which "help reduce the labor associated with shuffling, as well as ensuring that there is more security and randomization associated with the shuffles").

Nonetheless, on December 19, 2022, non-party USPCC was served with Plaintiffs' subpoena, demanding information not about automated card shufflers, but instead about a different product and market altogether: playing card *shoes*[1]. *See generally* Exh. A. Indeed, the subpoena itself concedes that USPCC and its shoes operate in a separate market, at one point demanding documents relating to the "market . . . for the lease and/or sale of electronic reading shoes." *See id.* at ¶ 5. In other words, Plaintiffs admittedly seek proprietary commercial records from a non-party that has no role in Plaintiff's defined market—whether as a consumer or a supplier.

This incursion is all-encompassing, with Plaintiffs seeking access to *all* of USPCC's proprietary commercial records relating to its electronic reading shoes[2], including (among others):

(a) "All transactional databases and records concerning leases and/or sales of electronic reading shoes";

(b) "All leases and/or sales of electronic reading shoes";

(c) "Documents sufficient to show the methodology used to measure costs, profit, and margin information for electronic reading shoes";

(d) "All documents relating to Your pricing decisions for electronic reading shoes."

*See id*.

---

[1] Electronic reading shoes have no shuffling capabilities.
[2] USPCC has an extensive, global patent portfolio relating to its electronic reading shoes.

Accordingly, on December 29, 2022, and pursuant to Fed. R. Civ. P. 37(a)(1), counsel for USPCC requested that Plaintiffs withdraw their subpoena, noting its lack of relevancy, the substantial burden of its requests, and USPCC's proprietary commercial records. *See* Exh. B. Later that day, Plaintiffs' counsel acknowledged that despite issuing a sweeping subpoena, "it is possible to narrow the requests" to obtain what Plaintiffs actually need. Nonetheless, Plaintiffs declined to withdraw the subpoena itself, and instead proposed a call. *See id*.

On January 3, 2023, USPCC's counsel joined the videoconference organized by Plaintiffs' counsel. To the surprise of USPCC's counsel, the videoconference included not just Plaintiffs' counsel, but approximately four other attorneys. When USPCC's counsel asked whether all attendees represented Plaintiffs, they revealed that all but two have no involvement in this case, but instead represent parties in a separate arbitration action out of New York, *Mohawk Gaming Enterprises LLC v. Scientific Games Corp.*, AAA Case No. 01-20-0015-6196 ("New York Arbitration"). Plaintiffs' counsel provided no advance notice to USPCC's counsel of the participation of the New York Arbitration attorneys in the videoconference. According to the New York Arbitration attorneys, their arbitration involves similar issues, and therefore their clients also seek USPCC's commercial records, apparently via Plaintiffs' subpoena.

As to the substance of the subpoena itself, Plaintiffs' counsel explained that Plaintiffs' (and the New York Arbitration parties') requests *could* relate to their damages. Yet, when pressed why Plaintiffs need, for example, "[a]ll transactional databases and records" relating to USPCC's electronic reading shoes over the course of 22 years, Plaintiffs seemingly abandoned the purported "possible [] narrow[ing]" altogether. Instead, Plaintiffs' counsel insisted that they could only issue "high-level" requests because more targeted inquiries into USPCC's commercial records are only possible after first seeing what all is out there. In other words, Plaintiffs must view *all* of USPCC's commercial records relating to its shoes in order to find something that may be relevant to Plaintiffs' automated card shuffler market. As Plaintiffs' counsel stated, getting any more specific

about what Plaintiffs actually need and what may be relevant would be akin to searching around a "dark room."

**II.    LEGAL STANDARD**

Fed. R. Civ. P. 45 "allows a party to obtain relevant and proportional information from a non-party, provided the subpoena does not impose an undue burden," "a determination that asks the Court to weigh the relevance of the requested material against the burden of producing it." *Craigville Telephone Co. v. T-Mobile United USA, Inc.*, 2022 U.S. Dist. LEXIS 226705, at *2-3 (N.D. Ill. 2022). Applying this standard, the Court has repeatedly made clear that "non-party status is a significant factor . . . because non-parties have a different set of expectations than parties." *Id*. (citations omitted). That is, "[w]hile parties to a lawsuit must accept the invasive nature of discovery, non-parties experience an unwanted burden." *Id*. ("It is one thing to subject parties to the trials and tribulations of discovery - rightly regarded as 'the bane of modern litigation,' but non-parties do not 'have a horse in [the] race'") (citations omitted); *see Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013) ("courts give special weight to the unwanted burdens thrust upon non-parties when balancing competing needs").

Like the "burden" inquiry, this more stringent standard applies with equal force to the "relevancy" element, with this Court explaining that despite the broader "relevancy" standard for parties to a lawsuit, "non-parties are not treated exactly like parties in the discovery context, and the possibility of mere relevance may not be enough; rather, non-parties are entitled to somewhat greater protection." *Am. Society of Media Photographers v. Google, Inc.*, 2013 U.S. Dist. LEXIS 64041, at *5-6 (N.D. Ill. 2013) (citations omitted).

Pursuant to Fed. R. Civ. P. 45(d)(3)(B), these protections become even more important when the subpoena demands the non-party's protected information, such as "trade secret[s] or other confidential research, development, or commercial information." Under this standard, federal courts—including this Court—have explained that "[t]o obtain discovery from nonparties,

a party must establish that its need for discovery outweighs the nonparty's interest in nondisclosure." *In re Asacol Antitrust Litigation*, 2017 U.S. Dist. LEXIS 225917, at *37 (D. Mass. 2017) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs. This is particularly true where, as here, the request is for highly confidential commercial information") (citing *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)); *see Am. Society of Media Photographers*, 2013 U.S. Dist. LEXIS 64041, at *5-6 (quashing subpoena because it "demands information about [the non-party's] revenues and profits, pricing structure, customers, and other proprietary information").

### III. ARGUMENT

#### A. Quashing Plaintiffs' Subpoena

Pursuant to Fed. R. Civ. P. 45(d)(3), non-party USPCC respectfully requests that the Court quash Plaintiffs' subpoena, which not only seeks an admittedly burdensome, indiscriminate dive into USPCC's proprietary commercial records, but does so for the purpose of obtaining information that is irrelevant to their claims. As to the latter, Plaintiffs could not be any clearer that their anti-trust action is based on the "market" for "automatic card shuffler machines," alleging that Defendants "monopoliz[ed] [] the market for automatic card shufflers." Compl. (Doc. #1), ¶ 1, ¶ 3 (Defendants control "virtually 100%" of "the market for automated card shufflers"), ¶ 7 (reiterating the "relevant market for card shufflers").

Plaintiffs' subpoena has nothing to do with these shufflers, but instead demands records relating to a different product and market altogether: playing card *shoes*. *See generally* Exh. A. Indeed, Plaintiffs—which again, are "direct purchasers of automated card *shufflers*"—concede as much in the subpoena itself. *See id.* at ¶ 5 (seeking documents relating to the "market . . . for the lease and/or sale of *electronic reading shoes*") (emphasis added). Compared to Plaintiffs' 268 allegations regarding the "shufflers" at issue, the Complaint only mentions these shoes *once*,

noting in passing that after going through the shufflers at issue, playing cards may sometimes make their way to a shoe for holding. *See* Compl. (Doc. #1), ¶ 79.

In any event, even assuming any "tangential" relevancy, this certainly does not justify Plaintiffs' blatant intrusion into USPCC's proprietary commercial records. *See Am. Society of Media Photographers*, 2013 U.S. Dist. LEXIS 64041, at *5-6 (because "the information Plaintiffs seek from [the non-party] is at best only tangentially related to their claims . . . Plaintiffs have failed to demonstrate a substantial need for such documents"). Indeed, while Plaintiffs speculate that their requests could potentially relate to damages, and provide general authority on "yardstick" calculations, this does not warrant Plaintiffs' demand of, for example, "[a]ll transactional databases and records" relating to USPCC's shoes over the course of 22 years. Exh. A, ¶ 2. Indeed, none of Plaintiffs' cases mentioned subpoenas *at all*, let alone sweeping demands of non-parties to the lawsuit that operate their business in a different market.

When USPCC sought more insight into Plaintiffs' "possible [] narrow[ing]" of its subpoena, Plaintiffs apparently abandoned that option altogether, declaring that issuing anything other than these "high-level" requests would be akin to searching around a "dark room" because until Plaintiffs see *all* of USPCC's commercial records about its shoes, Plaintiffs do not know what exactly they need. In other words, Plaintiffs have perfectly described a fishing expedition, and have attempted to flip Fed. R. Civ. P. 45 on its head—*i.e.*, obtain everything now, and then hopefully identify the relevant items later. Indeed, these sweeping explorations are the reason for this Court's more stringent non-party standard in the first place. *See Am. Society of Media Photographers*, 2013 U.S. Dist. LEXIS 64041, at *5-6 ("non-parties are not treated exactly like parties in the discovery context, and the possibility of mere relevance may not be enough; rather, non-parties are entitled to somewhat greater protection"). To this extent, unless Plaintiffs can articulate precisely what they think is relevant, the protected commercial records of non-parties *should be* a "dark room" to Plaintiffs. For these reasons, this Court has rejected nearly identical

demands. *See id*. (quashing subpoena because it "demands information about [the non-party's] revenues and profits, pricing structure, customers, and other proprietary information").

To provide further context regarding Plaintiffs' fishing expedition, Plaintiffs have revealed that parties to a different case altogether (which have not issued any subpoenas) will also join Plaintiffs' fishing expedition. As their lone support, Plaintiffs and the New York Arbitration parties point to the Agreed Confidentiality Orders, which merely govern the parties' duties with respect to produced information, and certainly do not require non-parties to also produce their confidential records to parties in other cases altogether. *See* Exh. C. That is, in their view, the New York Arbitration parties can tag along to Plaintiffs' non-party subpoenas, and the non-parties must comply—all because Plaintiffs and the New York Arbitration parties agreed as much.

B.   **Reasonable Fees**

In quashing similar subpoenas, this Court has required the issuing party to pay the fees that the non-party incurred in responding to the overly broad demands. Specifically, Fed. R. Civ. P. 45(c) "allows for costs, including reasonable attorney fees, when a party has faced an undue burden or expense in objecting to a subpoenaing party who failed to take reasonable steps to ensure the subpoena would not result in an undue burden." *Id*. Under this standard, "[g]ood faith in issuing a subpoena is not sufficient to avoid sanctions under Rule 45(c)(1) if a party has issued the subpoena in violation of the duty imposed by that Rule." *Id*. (citations omitted).

Here, by their own express admission, Plaintiffs issued a subpoena that they knew was burdensome and imprecise, solely because they are in a "dark room" and not sure what exactly they are seeking. Ultimately, it is *Plaintiffs'* responsibility to conduct a deeper examination, or ask their "yardstick" damage experts what specific information is needed, prior to issuing a subpoena. Plaintiffs certainly should have done so after USPCC raised these issues pursuant to Fed. R. Civ. P. 37(a)(1). Undeterred, Plaintiffs refused to withdraw their subpoena, despite still being unable to articulate their suggested "possible [] narrow[ing]," and in fact, insisting that doing so was

impossible. *See id*. (awarding fees because plaintiffs "continued to seek [the non-party's] confidential business information after they learned [the non-party] was not in the business of licensing stand-alone images or a licensing intermediary that could shed light on the potential market of plaintiffs' images").

## IV. CONCLUSION

For the foregoing reasons, USPCC respectfully asks the Court to quash Plaintiffs' subpoena, and pursuant to Fed. R. Civ. P. 45(d)(1), order Plaintiffs to pay the reasonable fees that USPCC incurred to respond to their demands.

Date: January 9, 2023

Respectfully submitted,

**DINSMORE & SHOHL LLP**

/s/ Brian J. Talcott
Brian J. Talcott
Krysta K. Gumbiner
DINSMORE & SHOHL, LLP
222 W. Adams St., Suite 3400
Chicago, IL 60606
Phone: (312) 837-4310
Fax: (312) 372-6085
brian.talcott@dinsmore.com
Krysta.gumbiner@dinsmore.com

*Counsel for The U.S. Playing Card Company*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was filed on January 9, 2023, with the clerk of the Court using the CM/ECF system, which will send notice to all counsel of record.

Christopher L. Lebsock
Michael P. Lehmann
Hausfeld LLP
600 Montgomery St., Suite 3200
San Francisco, CA 94111
clebsock@hausfeld.com
mlehmann@hausfeld.com

Scott A. Martin
Hausfeld LLP
33 Whitehall St., 14th Floor
New York, NY 10004
smartin@hausfeld.com

Yelena W. Dewald
888 16th St., N.W., Suite 300
Washington, DC 20006
ydewald@hausfeld.com

Shannon Marie McNulty
Clifford Law Offices
120 N. LaSalle St., Suite 3100
Chicago, IL 60602
smm@cliffordlaw.com

Craig C. Martin
Aaron J. Hersh
Matt D. Basil
Sara Tonnies Horton
Wilkie Farr & Gallagher LLP
300 N. LaSalle
Chicago, IL 60654
cmartin@wilkie.com
ahersh@wilkie.com
mbasil@wilkie.com
shorton@wilkie.com

Matthew S. Freimuth
Wilkie Farr & Gallagher LLP
787 Seventh Ave.
New York, NY 10019
mfreimuth@wilkie.com

Kyle G. Bates
Schieder Wallace Cottrell Konecky Wotkyns
2000 Powell St., #1400
Emeryville, CA 94608
kbates@hausfeld.com

Brittany L. Sukiennik
Kevin J. Orsini
Keith R. Hummel
Cravath Swaine & Moore LLP
Worldwide Plaza
825 Eight Ave.
New York, NY 10019
bsukiennik@cravath.com
korsini@cravath.com
khummel@cravath.com

Julianne M. Hartzell
Marshall Gerstein & Borun
233 S. Wacker Dr.
6300 Sears Tower
Chicago, IL 60606
jhartzell@marshallip.com

/s/Brian J. Talcott